**Eric B. Swartz, ISB #6396**
**Joy M. Vega, ISB #7887**
**Mark P. Coonts, ISB #7689**
**JONES & SWARTZ PLLC**
1673 W. Shoreline Drive, Suite 200 [83702]
P. O. Box 7808
Boise, ID 83707-7808
Telephone:  (208) 489-8989
Facsimile:  (208) 489-8988
Email: eric@jonesandswartzlaw.com
        joy@jonesandswartzlaw.com
        mark@jonesandswartzlaw.com

**Attorneys for Plaintiff Darien E. Roseen**


## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DARIEN E. ROSEEN, individually,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>IDAHO STATE POLICE; TROOPER JUSTIN KLITCH, in his individual and official capacities; FRUITLAND CITY POLICE DEPARTMENT; OFFICER CHRISTENSEN, in his individual and official capacities; PAYETTE COUNTY SHERIFF'S OFFICE; DEPUTY WEBSTER, in his individual and official capacities; and JOHN DOES I–V, unknown members of law enforcement, in their individual and official capacities,<br><br>　　　　　　　　Defendants. | Case No. 1:14-cv-118<br><br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, DARIEN E. ROSEEN, by and though his counsel of record,

Jones & Swartz PLLC, and for his Complaint against the Defendants, complains and avers as

follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Darien E. Roseen ("Plaintiff" or "Mr. Roseen") brings claims under 42 U.S.C. § 1983 and seeks damages against Defendants Idaho State Police, Trooper Justin Klitch, Fruitland City Police Department, Officer Christensen, Payette County Sheriff's Office, and Deputy Webster (collectively "Defendants") for committing acts under the color of law which deprived Plaintiff of protected rights, privileges, and immunities secured by the Constitution or laws of the United States.

2.      Plaintiff's rights of property and freedom were terminated and/or unduly restricted without due process of law and/or absent requisite evidentiary standards.

3.      This lawsuit addresses Defendants' actions, policies, practices, and/or customs of profiling drivers of vehicles from states that have legalized the possession and use of marijuana (*e.g.*, Colorado and Washington) as the drivers are traveling through Idaho.   In this case, Defendant Klitch targeted a vehicle with Colorado license plates, just as it crossed into Idaho from Oregon.   Defendant Klitch further targeted the Plaintiff because he carried a driver's license issued by the State of Washington and had begun his drive earlier that day in Pendleton, Oregon.   The other Defendants encouraged, joined, or aided Defendant Klitch in unlawful profiling and in doing so violated Plaintiff's civil rights.

4.      As of the date of the incident at issue herein, both Colorado and Washington had legalized medicinal possessions and use of marijuana and had voted to legalize the non-medicinal possession and use of marijuana within their borders, whereas such possession and use are illegal within the state of Idaho.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983, which furnishes a private

cause of action for violations of federal rights committed under the color of law, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America.

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) as certain of the controversies arise under the Constitution and laws of the United States and are brought for the purpose of redressing the deprivation of the Plaintiff's federally protected civil rights.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8.      Plaintiff Darien E. Roseen is an individual with his principal place of residence in the state of Washington.  Mr. Roseen maintains a secondary residence in the state of Colorado.

9.      Defendant Idaho State Police ("ISP") is a political subdivision of the State of Idaho.

10.     At all times relevant hereto, Defendant Trooper Justin Klitch ("Trooper Klitch") was an Idaho State Police Trooper.  Trooper Klitch is named as a Defendant in his individual and official capacities.

11.     Defendant Fruitland City Police Department is a political subdivision of the State of Idaho.

12.     At all times relevant hereto, Defendant Officer Christensen ("Officer Christensen") was an Officer of the Fruitland City Police Department.  Officer Christensen is named as a Defendant in his individual and official capacities.

13.     Defendant Payette County Sheriff's Office is a political subdivision of the State of Idaho.

14.     Defendant Deputy Webster ("Deputy Webster") is a Deputy with the Payette

County Sheriff's Office.  Deputy Webster is named as a Defendant in his individual and official capacities.

15.     Defendants John Does I–V are unknown members of an Idaho law enforcement agency and assisted Trooper Klitch, Officer Christenson, and Deputy Webster in the illegal search at the Payette County Sheriff's Office.

## FACTUAL ALLEGATIONS

16.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs and by reference incorporates each paragraph herein.

17.     On or about January 25, 2013, at approximately 11:40 a.m., Trooper Klitch was patrolling on Interstate 84 near milepost 1 in Payette County, Idaho.

18.     Trooper Klitch was stationary, in his ISP vehicle parked in the median of Interstate 84, observing eastbound traffic.

19.     Trooper Klitch observed the vehicle that Mr. Roseen was operating as it traveled eastbound on Interstate 84 from Oregon into Idaho.

20.     Mr. Roseen was driving a red, 4-door, Honda Ridgeline truck.  The Honda Ridgeline had Colorado license plates.

21.     Immediately after Mr. Roseen passed his location, Trooper Klitch pulled out from the Interstate median, rapidly accelerating to catch up with Mr. Roseen's vehicle.

22.     Upon information and belief, Trooper Klitch quickly followed Mr. Roseen only because Mr. Roseen's vehicle showed license plates from the state of Colorado.

23.     About the same time that Trooper Klitch pulled onto the Interstate, Mr. Roseen activated his turn signal and moved from the left lane into the right lane.  After changing lanes, Mr. Roseen exited the Interstate into a designated rest area.

24.     Trooper Klitch continued to accelerate and followed Mr. Roseen into the rest area.

COMPLAINT AND DEMAND FOR JURY TRIAL – 4

25. By the time Mr. Roseen was navigating the directional signage separating the truck and car areas of the rest area, Trooper Klitch was close behind him.

26. Trooper Klitch's sudden appearance and pursuit of Mr. Roseen caused Mr. Roseen to become uncomfortable, even though he did not perceive that he had done anything wrong.

27. Upon information and belief, Trooper Klitch followed Mr. Roseen into the rest area only because he concluded that Mr. Roseen must be transporting illegal substances.

28. Mr. Roseen did not commit any traffic offense while driving on the highway, and his exiting off of the highway into the rest area was not prohibited and he exited in a legal fashion.

29. At all times relevant hereto, the sky was overcast and cloudy.

30. At all times relevant hereto, the sides of the roadway into and around the rest area were generally covered with snow.

31. At all times relevant hereto, the curbing into and around the rest area was generally covered with snow.

32. At all times relevant hereto, precipitation fell from the sky, causing Trooper Klitch to use his windshield wipers.

33. At all times relevant hereto, the wind would gust with enough force to move the rest area's flags.

34. Mr. Roseen brought his vehicle to a stop in a designated parking space in the parking lot of the rest area.

35. The snowy conditions, combined with Mr. Roseen watching Trooper Klitch's patrol car suddenly appear behind him as he pulled into the rest area, caused Mr. Roseen to

unsuccessfully navigate the rest area curbing as he pulled into the parking lot and into the parking space.  The wheels of the Honda Ridgeline bumped into the curb when Mr. Roseen entered the rest area and again when he brought the vehicle to a stop in the parking space.

36.     Trooper Klitch activated his overhead lights only after Mr. Roseen had come to a complete stop in the rest area parking space.  Mr. Roseen exited and Trooper Klitch asked him to return to his vehicle.

37.     Trooper Klitch did not initially state the reason why he pursued and initiated contact with Mr. Roseen.   Trooper Klitch eventually mentioned that he had observed Mr. Roseen's failure to signal before exiting the Interstate onto the rest area's off-ramp.  Trooper Klitch also mentioned that he had seen the wheel(s) of Mr. Roseen's vehicle bump into the curbs.

38.     Trooper Klitch rejected Mr. Roseen's reason for pulling into the rest area – that he had to use the bathroom.  Trooper Klitch stated, "You didn't have to go to the bathroom before you saw me. … I'm telling you, you pulled in here to avoid me.  That's exactly what you did…."

39.     Trooper Klitch then asked Mr. Roseen why his eyes appeared glassy.

40.     Trooper Klitch then asked a series of questions about where Mr. Roseen was coming from (Washington), where he was headed to (Colorado), and the nature of his employment (retired).

41.     Trooper Klitch requested Mr. Roseen's driver's license and Mr. Roseen complied with the request.

42.     Trooper Klitch did not ask for proof of vehicle registration or proof of insurance and did not return to his vehicle at that time to check the validity of the driver's license.

43.     Then, Trooper Klitch accused Mr. Roseen of having something in his vehicle that he should not have in his vehicle.  Trooper Klitch told Mr. Roseen that he would be calling a

drug detecting canine to come and walk around the vehicle.

44.     After Mr. Roseen identified his possession of valid prescription medications, Trooper Klitch asked him, "When is the last time you used any marijuana?", thereby assuming that Mr. Roseen had, in fact, used marijuana and inferring that he had used it recently.

45.     Trooper Klitch requested consent to search Mr. Roseen's vehicle.  Mr. Roseen stated that he would not consent to the search of the vehicle if he had a choice in the matter.

46.     At that time, Trooper Klitch asked Mr. Roseen to step out of his vehicle and confronted him, repeatedly, but with different lines of questioning about what Mr. Roseen was hiding in his vehicle.  Trooper Klitch accused Mr. Roseen of transporting something illegal in his vehicle.

47.     Even though Mr. Roseen had refused his consent to search his vehicle, Trooper Klitch's repeated accusations of hiding something illegal caused Mr. Roseen to show him what was in different parts of the vehicle, different parcels within the vehicle, and the factory installed trunk located underneath the bed of the vehicle.

48.     Trooper Klitch stated that Mr. Roseen's behavior was consistent with a person who was hiding something illegal.

49.     Trooper Klitch stated that he was going to find the illegal items inside of the vehicle, one way or another.  Mr. Roseen continued to deny the presence of anything illegal.

50.     Trooper Klitch requested, a second time, Mr. Roseen's consent to search the vehicle.  Mr. Roseen did not consent to a search of his vehicle.

51.     Trooper Klitch continued to question Mr. Roseen about the contents of his vehicle.  Trooper Klitch also focused on the identity of the people who helped pack the items in the vehicle, including Mr. Roseen's wife and daughter.

52.    Trooper Klitch continued to ask Mr. Roseen questions and asked again, after already being told no, if he could search the bed and factory installed trunk underneath the vehicle's bed.

53.    Regardless of his prior refusals of consent to search the vehicle, Mr. Roseen agreed to show Trooper Klitch only the contents of the trunk located underneath the bed of the Honda Ridgeline.

54.    Mr. Roseen stated that if it was going to get him back on the road faster, Trooper Klitch could look at the contents of the factory installed trunk.

55.    Mr. Roseen told Trooper Klitch that the Ridgeline's factory installed trunk contained many new diapers and other presents from Mr. Roseen's daughter's baby shower.

56.    Mr. Roseen had to unpack most of the contents of the bed of the vehicle in order to access the trunk underneath the vehicle's bed.

57.    While Mr. Roseen was unpacking the contents of the bed, Trooper Klitch returned to his ISP patrol car and requested background checks on Mr. Roseen and/or his vehicle.  No negative information resulted from the background check(s).

58.    When Mr. Roseen opened the trunk compartment, and despite the strong gusts of wind and precipitation that day, Trooper Klitch claimed he could smell the odor of marijuana.

59.    Mr. Roseen stated that he could not smell the odor of marijuana that Trooper Klitch claimed to be coming from the trunk compartment.

60.    Trooper Klitch advised Mr. Roseen that, as a result of Trooper Klitch's alleged ability to smell the odor of marijuana, he now had probable cause to search the entire vehicle and all of its contents.

61.    Trooper Klitch searched Mr. Roseen's person.

COMPLAINT AND DEMAND FOR JURY TRIAL – 8

62.     Then Trooper Klitch placed Mr. Roseen in the back seat of his patrol car. Mr. Roseen had previously advised Trooper Klitch that he was suffering from a back injury as a result of slipping on ice earlier that day.  Sitting in the back of Trooper Klitch's patrol car aggravated the injury.

63.     Trooper Klitch told Mr. Roseen that he was not under arrest, but that he was detained and under Trooper Klitch's custody.  Trooper Klitch advised Mr. Roseen of his Miranda rights.

64.     Mr. Roseen told Trooper Klitch that he wanted an attorney.  Trooper Klitch did not allow Mr. Roseen to call an attorney and continued to accuse Mr. Roseen of having something illegal in the vehicle.

65.     At this point, the dashboard camera on Trooper Klitch's patrol car is turned off, including the audio, and it fails to document any further events.

66.     Trooper Klitch began to search the Ridgeline's bed, trunk, and all of the containers in the trunk compartment of the vehicle.  Trooper Klitch continued to unload the contents of the Ridgeline's bed and trunk at the rest area.

67.     On information and belief, Trooper Klitch radioed for assistance.  Officer Christensen, of the Fruitland City Police Department, arrived at the rest area in response to the request for assistance.

68.     Trooper Klitch and/or Officer Christensen continued searching the contents of the bed of the vehicle at the rest area while Mr. Roseen was detained in the back seat of Trooper Klitch's patrol car.

69.     At some point, Trooper Klitch and/or Officer Christensen decided to move the vehicle to the Payette County Sheriff's Sally Port to continue searching the vehicle.

70.    Neither Trooper Klitch nor Officer Christensen had the vehicle impounded.

71.    Neither Trooper Klitch nor Officer Christensen inventoried the contents of the vehicle at the rest area.

72.    Officer Christensen drove Mr. Roseen's vehicle to the Payette County Sheriff's Office Sally Port.

73.    Mr. Roseen did not give permission for Officer Christensen to drive his vehicle from the rest area to the Sheriff's Office.

74.    Trooper Klitch transported Mr. Roseen to the Payette County Sheriff's Office in the back seat of his patrol car.

75.    Officer Christensen escorted Mr. Roseen to the restroom and then directed Mr. Roseen to sit next to him in the Sherriff's Office while Trooper Klitch and two unknown law enforcement officers walked past Mr. Roseen carrying trash bags.

76.    After being further detained by Officer Christensen at the Sheriff's Office, Trooper Klitch issued Mr. Roseen a citation for inattentive/careless driving.  Trooper Klitch then told Mr. Roseen that he was free to leave, but that Trooper Klitch, Deputy Webster, Officer Christensen, and/or law enforcement personnel John Does I–V would be holding the Ridgeline in order to continue the search.

77.    Upon information and belief, Deputy Webster and law enforcement personnel John Does I–V assisted in searching Mr. Roseen's vehicle at the Sheriff's Office.

78.    Mr. Roseen was unable to leave despite being issued a citation because Trooper Klitch, Deputy Webster, and law enforcement personnel John Does I–V kept the Ridgeline at the Sheriff's Office Sally Port and continued to search the vehicle and its contents outside of Mr. Roseen's presence.

COMPLAINT AND DEMAND FOR JURY TRIAL – 10

79.     No inventory of the vehicle's contents was created during the search at the Payette County Sheriff's Office Sally Port.

80.     Trooper Klitch, Officer Christensen, Deputy Webster, and/or law enforcement personnel John Does I–V ripped or cut open the bags in Mr. Roseen's vehicle, damaging his property.

81.     Nothing illegal was found in the vehicle's passenger compartment as a result of the search.

82.     Nothing illegal was found in the vehicle's bed, or in any container in the vehicle's bed, as a result of the search.

83.     Nothing illegal was found in the trunk compartment underneath the vehicle's bed, or in any container in the trunk, as a result of the search.

84.     At no point did Trooper Klitch's line of questioning relate to Mr. Roseen's alleged improper driving pattern.  Instead, Trooper Klitch immediately accused Mr. Roseen of transporting something illegal.

85.     After Defendants finished searching the vehicle, they released it to Mr. Roseen.

86.     Several of the items in the vehicle were repackaged in trash bags consistent with the kind of trash bags Trooper Klitch and the deputies carried past Mr. Roseen and different than the one Mr. Roseen originally utilized.

87.     Trooper Klitch lacked sufficient probable cause to shift the primary purpose of the stop from a traffic stop to a narcotics investigation.  As such, Trooper Klitch was not justified in continuing Mr. Roseen's detention beyond the time necessary to effectuate the purpose of the original traffic stop.

88.     Trooper Klitch lacked sufficient legal authority to seize Mr. Roseen's person and

his property.

89.     Officer Christensen did not have legal authority to drive Mr. Roseen's vehicle to the Payette County Sheriff's Office.

90.     Neither Officer Christensen, Deputy Webster, nor law enforcement personnel John Does I–V had sufficient legal authority to search Mr. Roseen's vehicle.

91.     Payette County Sheriff's Office provided Trooper Klitch with the location and facilities to illegally search Mr. Roseen's vehicle and illegally detain Mr. Roseen.

92.     Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V assisted Trooper Klitch with the illegal search of Mr. Roseen's vehicle and the continued illegal detention of Mr. Roseen.

93.     None of the search activities of Trooper Klitch, Officer Christensen, Deputy Webster, or law enforcement personnel John Does I–V were recorded on Trooper Klitch's patrol car camera after Mr. Roseen was placed in the back seat of Trooper Klitch's vehicle.

## COUNT I
## UNREASONABLE SEIZURE OF PERSON
## IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS

94.     Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

95.     Trooper Klitch acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Idaho State Police.

96.     Officer Christensen acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Fruitland City Police Department.

97.     Deputy Webster acted or purported to act in the performance of his official duties

COMPLAINT AND DEMAND FOR JURY TRIAL – 12

as an employee of, and under the official policy or custom of, the Payette County Sheriff's Office.

98.      Law enforcement personnel John Does I–V acted or purported to act in the performance of their official duties as employees of, and under the official policy or custom of, their respective law enforcement agency.

99.      Mr. Roseen had a right to be free from an unreasonable seizure of his person.

100.      Trooper Klitch seized Mr. Roseen's person.

101.      Trooper Klitch intentionally terminated Mr. Roseen's freedom of movement.

102.      Mr. Roseen's liberty was restrained by Trooper Klitch at the rest area when he pulled his ISP patrol car behind Mr. Roseen's vehicle and approached Mr. Roseen in the parking lot.  Mr. Roseen did not feel free to ignore the presence of Trooper Klitch.

103.      Mr. Roseen's liberty was restrained when Trooper Klitch would not allow him to use the toilet in the rest area.

104.      Mr. Roseen's liberty was restrained when Trooper Klitch began making statements that inferred that Mr. Roseen had engaged in illegal activity, such as, "your eyes are glassy," and "When was the last time you did marijuana?"

105.      Mr. Roseen's liberty was restrained at the rest area when Trooper Klitch accused him of having something illegal in his possession and advised him that Trooper Klitch was going to find the allegedly illegal thing, one way or another.

106.      Mr. Roseen's liberty was restrained when Trooper Klitch advised him that a canine unit would be called to walk around his vehicle.

107.      Trooper Klitch intentionally placed Mr. Roseen under his custody and detained Mr. Roseen in the back seat of the ISP patrol car.

108.    Mr. Roseen was forced to wait in the back seat of the ISP patrol car and at the Payette County Sheriff's Office while Trooper Klitch, Officer Christensen, and Deputy Webster searched the entire contents of his vehicle.

109.    Trooper Klitch lacked sufficient legal justification to detain Mr. Roseen beyond the scope of the initial purpose of the traffic stop.  The original purpose of the traffic stop was allegedly premised on Trooper Klitch seeing Mr. Roseen change lanes without signaling and then observing Mr. Roseen's vehicle bump into the curbing at the rest area.

110.    When Trooper Klitch began questioning Mr. Roseen about his alleged possession of something illegal within his vehicle, Trooper Klitch exceeded the scope of the initial purpose of the stop without justification for doing so.

111.    Trooper Klitch issued a citation to Mr. Roseen and asserted that Mr. Roseen was then free to leave, when he was not.  By keeping Mr. Roseen's vehicle, it extended the duration and scope of the initial traffic stop.

112.    Trooper Klitch restrained Mr. Roseen's liberty by physical force and by a show of authority.

113.    The length and scope of the seizure of Mr. Roseen's person was not reasonable.

114.    Trooper Klitch deprived Mr. Roseen of his liberty without due process of law.

115.    In seizing Mr. Roseen's person, Trooper Klitch acted intentionally and/or with deliberate indifference to Mr. Roseen's rights.

116.    The seizure of Mr. Roseen's person was unreasonable.

117.    At all times relevant hereto, the rights held by Mr. Roseen to be free from unreasonable seizure of his person were clearly established.

118.    Upon information and belief, the ISP has expressly adopted an official policy or

has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, and searches and seizures of the person.

119.    Upon information and belief, the Fruitland City Police Department has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, and searches and seizures of the person.

120.    Upon information and belief, the Payette County Sheriff's Office has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, and searches and seizures of the person.

121.    The acts of Trooper Klitch, Officer Christensen, Deputy Webster, or law enforcement personnel John Does I–V resulted in Mr. Roseen's injury, including pecuniary and nonpecuniary damages and attorney fees and costs, in amounts to be determined at trial.

**COUNT II**
**UNREASONABLE SEIZURE OF PROPERTY**
**IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS**

122.    Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

123.    Trooper Klitch acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Idaho State Police.

124.    Officer Christensen acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Fruitland City Police Department.

125.    Deputy Webster acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Payette County Sheriff's Office.

126.   Law enforcement personnel John Does I–V acted or purported to act in the performance of their official duties as employees of, and under the official policy or custom of, their respective law enforcement agency.

127.   Mr. Roseen had a right to be free from an unreasonable seizure of his property.

128.   Trooper Klitch, Officer Christensen, and Deputy Webster seized Mr. Roseen's vehicle and its contents.

129.   Trooper Klitch placed Mr. Roseen in his custody and took possession and/or control of Mr. Roseen's vehicle.   He took possession of its contents in a manner that meaningfully interfered with Mr. Roseen's right to possess his property.

130.   Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V did not impound the vehicle or inventory the items contained within the vehicle.   Instead, Officer Christensen drove the vehicle, without Mr. Roseen's permission, from the rest area to the Payette County Sheriff's Office Sally Port, where they continued the unreasonable search of the vehicle and its contents.

131.   Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V seized Mr. Roseen's vehicle without a warrant authorizing the seizure. No written order, signed by a judge, existed to permit the law enforcement officers to seize Mr. Roseen's vehicle or its contents.

132.   No illegal items were within Mr. Roseen's vehicle and in plain view of any law enforcement officer.

133.   Trooper Klitch, Officer Christensen, and Deputy Webster did not seize Mr. Roseen's property incident to his arrest.

134.   Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement

personnel John Does I–V lacked legal justification to hold and search Mr. Roseen's vehicle in the Payette County Sheriff Office's Sally Port.

135.   The acts of Trooper Klitch, Officer Christensen, Deputy Webster, or law enforcement personnel John Does I–V of transporting and holding Mr. Roseen's vehicle at the Payette County Sheriff's Office, without authority or legal justification, deprived Mr. Roseen of his right to property.

136.   The Defendants' acts of transporting and holding Mr. Roseen's vehicle violated his right to liberty.

137.   During their seizure and search of Mr. Roseen's vehicle and its contents, Trooper Klitch, Officer Christensen, and Deputy Webster damaged Mr. Roseen's property.

138.   In seizing Mr. Roseen's vehicle and its contents, Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V acted intentionally and/or with deliberate indifference to Mr. Roseen's rights.

139.   The seizure of Mr. Roseen's property was unreasonable.

140.   Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V deprived Mr. Roseen of his property without due process of law.

141.   At all times relevant hereto, the rights held by Mr. Roseen to be free from unreasonable seizure of his property were clearly established.

142.   Upon information and belief, the ISP has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, and seizures of property.

143.   Upon information and belief, the Fruitland City Police Department has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops,

vehicle impounds, narcotics investigations, and seizures of property.

144.    Upon information and belief, the Payette County Sheriff's Office has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, and seizures of property.

145.    The acts of Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V resulted in Mr. Roseen's injury, including pecuniary and nonpecuniary damages and attorney fees and costs, in amounts to be determined at trial.

**COUNT III**
**UNREASONABLE SEARCH**
**IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS**

146.    Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

147.    Trooper Klitch acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Idaho State Police.

148.    Officer Christensen acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Fruitland City Police Department.

149.    Deputy Webster acted or purported to act in the performance of his official duties as an employee of, and under the official policy or custom of, the Payette County Sheriff's Office.

150.    Law enforcement personnel John Does I–V acted or purported to act in the performance of their official duties as employees of, and under the official policy or custom of, their respective law enforcement agency.

151.    Mr. Roseen had a right to be free from an unreasonable search of his person and

vehicle.

152.   Trooper Klitch told Mr. Roseen that he was not under arrest, despite placing him in the back seat of his patrol car and reading him his Miranda rights.

153.   Trooper Klitch, Officer Christensen, and Deputy Webster searched Mr. Roseen's vehicle without a search warrant.  No written order, signed by a judge, existed to permit the law enforcement officers to search Mr. Roseen or his vehicle.

154.   Trooper Klitch, Officer Christensen, and Deputy Webster did not search Mr. Roseen's vehicle incident to his arrest.

155.   Mr. Roseen did not consent to the search of the passenger compartment of the vehicle.

156.   Officer Christensen conducted an unlawful search of the passenger compartment of Mr. Roseen's vehicle by driving the vehicle after Mr. Roseen informed Trooper Klitch that he did not consent to a search of the vehicle's passenger compartment.

157.   Upon information and belief, Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V searched the passenger compartment and containers located inside that area.

158.   Mr. Roseen did not consent to the search of the containers within the bed of the vehicle.

159.   Trooper Klitch, Officer Christensen, Deputy Webster, and law enforcement personnel John Does I–V searched all of the containers packed in the bed of Mr. Roseen's vehicle.

160.   Mr. Roseen did not voluntarily consent to the search of the trunk compartment. Mr. Roseen consented to the search of the trunk compartment only after Trooper Klitch stated

that he was going to call a canine unit.  Mr. Roseen consented to the search of the trunk compartment only after Trooper Klitch made it clear that Mr. Roseen was not free to leave unless and until he allowed Trooper Klitch to see the items packed in the trunk compartment.

161.    At all times during the searches of Mr. Roseen's vehicle, no circumstances existed that would cause a reasonable person to believe that a search was necessary to prevent physical harm to any person or destruction of any alleged illegal evidence.

162.    At all times relevant hereto, there was sufficient time for Trooper Klitch to obtain a search warrant.

163.    At no time relevant hereto did an emergency exist that presented an immediate need for Trooper Klitch, Officer Christensen, Deputy Webster, or law enforcement personnel John Does I–V to protect life or property.

164.    Trooper Klitch lacked probable cause to conduct a warrantless search of Mr. Roseen's vehicle.

165.    Officer Christensen did not smell the odor of marijuana in or around Mr. Roseen's vehicle.   Office Christensen lacked probable cause to conduct a warrantless search of Mr. Roseen's vehicle.

166.    Deputy Webster did not smell the odor of marijuana in or around Mr. Roseen's vehicle.  Deputy Webster lacked probable cause to conduct a warrantless search of Mr. Roseen's vehicle.

167.    Trooper Klitch, Officer Christensen, Deputy Webster, and/or law enforcement personnel John Does I–V searched Mr. Roseen's vehicle without a warrant or a valid exception to the warrant requirement.

168.    In conducting the searches, Trooper Klitch, Officer Christensen, and Deputy

Webster acted intentionally and/or with deliberate indifference to Mr. Roseen's rights.

169.    The searches were unreasonable and violated Mr. Roseen's constitutional rights.

170.    Defendants deprived Mr. Roseen of his liberty and property without due process of law.

171.    At all times relevant hereto, the rights held by Mr. Roseen to be free from unreasonable searches were clearly established.

172.    Upon information and belief, the ISP has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, searches of property, and searches of the person.

173.    Upon information and belief, the Fruitland City Police Department has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, searches of property, and searches of the person.

174.    Upon information and belief, the Payette County Sheriff's Office has expressly adopted an official policy or has a longstanding practice or custom regarding traffic stops, vehicle impounds, narcotics investigations, searches of property, and searches of the person.

175.    The acts of Trooper Klitch, Officer Christensen, Deputy Webster, and/or law enforcement personnel John Does I–V resulted in Mr. Roseen's injury, including pecuniary and nonpecuniary damages and attorney fees and costs, in amounts to be determined at trial.

**COUNT IV**
**UNLAWFUL SELECTIVE ENFORCEMENT**
**IN VIOLATION OF RIGHT TO INTERSTATE TRAVEL IN VIOLATION OF THE**
**EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT**

176.    Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

177.    Trooper Klitch acted or purported to act in the performance of his official duties

as an employee of, and under the official policy or custom of, the Idaho State Police.

178.    In the absence of a compelling State interest, any person has the right to enter and leave Idaho, and the right to be treated as a welcome visitor rather than an unfriendly trespasser.

179.    Mr. Roseen has a right to interstate travel, including not being treated differently from intrastate travelers.

180.    Mr. Roseen was lawfully driving on Interstate 84, from Washington to Colorado, through Idaho.

181.    Trooper Klitch's decision to stop Mr. Roseen's vehicle, and his conduct during the traffic stop was, *inter alia*, motivated by a discriminatory purpose, and had a discriminatory effect on the identifiable group to which Mr. Roseen belongs.

182.    Trooper Klitch profiled, followed, and pulled over the vehicle driven by Mr. Roseen because it had Colorado license plates.

183.    Upon learning that Mr. Roseen came from Washington, Trooper Klitch further profiled Mr. Roseen.  Trooper Klitch assumed and alleged that Mr. Roseen was a person who was transporting marijuana based on his states of residence.

184.    Targeting Mr. Roseen's vehicle while traveling through Idaho, based on his Colorado license plates, infringed upon Mr. Roseen's constitutional right to migrate and engage in interstate travel.

185.    Trooper Klitch did not witness a violation of Idaho law before he initiated his rapid pursuit of Mr. Roseen's vehicle, after crossing the Idaho border.

186.    Trooper Klitch's profiling of Mr. Roseen discouraged his right to interstate travel because he was targeted for criminal infractions for the reason that the license plates on his vehicle were from Colorado.

187.    Mr. Roseen was discouraged from interstate travel because he was targeted for criminal infractions for the reason that his states of residence are Washington and Colorado.

188.    Trooper Klitch subjected Mr. Roseen to unequal treatment based upon Mr. Roseen's particular states of residence.

189.    At all times relevant hereto, the rights held by Mr. Roseen to be free from unequal treatment under the law, and to interstate travel, were clearly established.

190.    Upon information and belief, the ISP has expressly adopted an official policy regarding profiling and initiating traffic stops upon vehicles showing license plates from states that have legalized the sale, possession or use of marijuana.

191.    The acts of Trooper Klitch, Officer Christensen, Deputy Webster, and/or law enforcement personnel John Does I–V resulted in Mr. Roseen's injury, including pecuniary and nonpecuniary damages and attorney fees and costs, in amounts to be determined at trial.

## COUNT V
## UNAUTHORIZED OPERATION OF A PRIVATE MOTOR VEHICLE
## IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS

192.    Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

193.    Mr. Roseen had a constitutional right to not be deprived of his personal property, comprised of his vehicle and the contents within the vehicle, without due process of law.

194.    Mr. Roseen had a constitutional right to withhold his consent to have officers search any part of the vehicle without a warrant.

195.    Without Mr. Roseen's permission or probable cause to seize his personal property, Defendants had no justification for depriving Mr. Roseen of his personal property, including operating the vehicle without consent.

196.    Defendants' acts resulted in Mr. Roseen's injury, including pecuniary and nonpecuniary damages and attorney fees and costs, in amounts to be determined at trial.

## DAMAGES

197.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs and by reference incorporates each paragraph herein.

198.    As a direct and proximate result of the unlawful acts of Defendants as described herein, Plaintiff has been injured as follows, but not limited to:

(a)     Plaintiff has been deprived of his constitutional rights guaranteed by the United States Constitution.

(b)     Plaintiff has suffered discrimination and/or harassment as a result of showing valid license plates from a state that has legalized the possession and use of marijuana.

(c)     Plaintiff has suffered discrimination and/or harassment as a result of having a valid driver's license from a state that has legalized the possession and use of marijuana.

(d)     Plaintiff has suffered damage to and/or loss of his property.

(e)     Plaintiff has incurred monetary expenses due to the termination of each of the above losses of right or freedom.

(f)     Plaintiff has incurred, and will be required to incur in the future, legal fees and costs to protect his rights.

## ATTORNEY FEES AND COSTS

Plaintiff has been forced to incur attorney fees and costs related to the prosecution of this matter.   Plaintiff is entitled to recover his reasonable costs and attorney fees pursuant to 42 U.S.C. §§ 1981a(b), 1983, and 1988; Idaho Code §§ 12-117, 12-120 and/or 12-121; Federal Rule of Civil Procedure 54; and other applicable law.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of no less than twelve (12) persons on all issues and all claims herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants as follows:

1.      For an award of special, general and punitive damages for Plaintiff's losses incurred as a result of the Defendants' violations of Plaintiff's civil rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution in an amount that will fully and fairly compensate the Plaintiff for his losses, pain and suffering, emotional distress and anguish, and property damage in amounts to be determined at trial;

2.      For punitive damages based upon Defendants' willful violations of and callous indifference to Plaintiff's constitutionally protected rights, in amounts that will deter similar wrongful conduct in the future, to be determined at trial;

3.      For an award of pre-judgment and post-judgment interest as allowed by law;

4.      For reasonable attorney fees incurred in the prosecution of this action, or, in the event judgment is taken by default against any Defendant, the amount of $5,000; and

5.      For all other and further relief as the Court deems just and equitable, and to which Plaintiff is due as a matter of law and equity.

DATED this 26th day of March, 2014.

JONES & SWARTZ PLLC


By   _/s/ Mark P. Coonts_____
     ERIC B. SWARTZ
     JOY M. VEGA
     MARK P. COONTS